*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

| | |
|---|---|
| *RYAN L. LICHTENSTEIN,* ) | |
| ) | |
| *Plaintiff* ) | |
| ) | |
| v. ) | *Docket No. 05-111-P-H* |
| ) | |
| *JO ANNE B. BARNHART,* ) | |
| *Commissioner of Social Security,* ) | |
| ) | |
| *Defendant* ) | |

*REPORT AND RECOMMENDED DECISION[1]*

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the issue whether substantial evidence supports the commissioner's determination that the plaintiff, who alleges disability stemming from anxiety, depression and a learning disability, is capable of making an adjustment to work existing in significant numbers in the national economy. I recommend that the decision of the commissioner be affirmed.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had no physical limitations and retained the residual functional capacity ("RFC") to (i) understand, remember and carry out simple,

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on May 26, 2006, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority and page references to the administrative record.

repetitive job instructions and to perform self-paced competitive work that did not involve production-line work, and (ii) work in coordination with a few co-workers, tolerate minimal supervision consistent with competitive work and occasionally interact with the general public, Finding 6, Record at 21; that he suffered symptomatology from various sources that caused some anxiety and depression from time to time but would allow enough attention and response to carry out, satisfactorily, normal work assignments within the above-cited RFC, *id*.; that, considering his age (17 at the time of alleged onset of disability, defined as a "younger individual"), educational background (high school), work experience (no transferable skills) and RFC, he was capable of making a vocational adjustment to work existing in significant numbers in the national economy, Findings 7-11, *id*. at 21-22; and that he therefore had not been under a disability at any time through the date of decision, Finding 12, *id*. at 22.[2] The Appeals Council declined to review the decision, *id*. at 6-9, making it the final determination of the commissioner, 20 C.F.R. §§ 404.981; 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his

---

[2] The plaintiff had acquired sufficient quarters of coverage to remain insured for purposes of SSD only through March 31, 2004, *see* Finding 1, Record at 21, nearly a year prior to the decision date of February 25, 2005, *see id*. at 22. However, inasmuch as the administrative law judge found the plaintiff not to have been disabled at any time prior to the date of decision, he did not undertake a *(continued on next page)*

past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7.  The record must contain positive evidence in support of the commissioner's findings regarding the plaintiff's residual work capacity to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff asserts that the administrative law judge erred in (i) ignoring the most recent mental RFC assessment of record, completed on April 8, 2004 by Disability Determination Services ("DDS") non-examining consultant Thomas Knox, Ph.D., (ii) relying on vocational-expert testimony elicited in response to a flawed hypothetical question, and (iii) according significant weight to a so-called "trial work period."  *See generally* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (Docket No. 9).  I find no reversible error.

## I. Discussion

### A. Knox RFC Assessment

As the plaintiff suggests, *see id*. at 2-3, an administrative law judge may not simply sweep the opinion of a DDS non-examining consultant under the rug, s*ee, e.g*., Social Security Ruling 96-6p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2004) ("SSR 96-6p"), at 130 ("Because State agency medical and psychological consultants and other program physicians and psychologists are experts in the Social Security disability programs, the rules in 20 CFR 404.1527(f) and 416.927(f) require administrative law judges and the Appeals Council to consider their findings of fact about the nature and severity of an individual's impairment(s) as opinions of nonexamining physicians and psychologists.  Administrative law judges and the Appeals Council are not bound by findings made by State agency or other program physicians and

---

separate SSD analysis.

psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions.").

However, that is not what happened in this case. The administrative law judge implicitly referred to the Knox mental RFC assessment in stating:

> In assessing the claimant's residual functional capacity, the undersigned has given careful consideration to the opinions expressed by the medical sources of record, in accordance with Social Security Rulings 96-2p and 96-6p. The undersigned has considered the opinions of the experts at the state Disability Determination Services. As non-examining physicians, their opinions are not entitled to controlling weight, but must be considered and weighed as those of highly qualified physicians who are experts in the evaluation of the medical issues in disability claims under the Social Security Act (96-6p). The undersigned finds these opinions to be well supported and consistent with the record as a whole. Therefore, they have been given considerable weight.

Record at 19.

The administrative law judge's conclusion that the Knox assessment essentially accorded with, and supported, his own was reasonable. In Section I (Summary Conclusions) of his April 8, 2004 report, Dr. Knox rated the plaintiff as "not significantly limited" in eleven of twenty listed categories. *See id*. at 427-28. He deemed the plaintiff moderately limited in ability to (i) understand and remember detailed instructions, (ii) carry out detailed instructions, (iii) maintain attention and concentration for extended periods, (iv) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, (v) complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, (vi) accept instructions and respond appropriately to criticism from supervisors, (vii) get along with co-workers or peers without distracting them or exhibiting behavior extremes, and (viii) respond appropriately to changes in the work setting. *See id*. He considered the plaintiff markedly limited in ability to interact appropriately with the general public. *See id*. at 428.

>In Section III (Functional Capacity Assessment), Dr. Knox concluded, in relevant part:
>
>>He can understand & remember simple instructions as well as those of moderate complexity. . . . He can carry out simple tasks in a normal schedule. . . . He can interact appropriately [with] coworkers & supervisors. . . . He can adapt to minor changes in routine.

*Id*. at 429. As counsel for the commissioner correctly noted at oral argument, per the Social Security Administration's Program Operation Manual System ("POMS"), Section III of Dr. Knox's report (the narrative contained on page 429 of the Record) – rather than Section I (the checkboxes on the preceding two pages) – constitutes Dr. Knox's RFC assessment. *See* POMS § DI 24510.060(B)(2)(a) & (4)(a), *available at* https://s044a90.ssa.gov/apps10/ ("Section I is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment. . . . Section III – Functional Capacity Assessment, is for recording the mental RFC determination. It is in this section that the actual mental RFC assessment is recorded, explaining the conclusions indicated in section I, in terms of the extent to which these mental capacities or functions could or could not be performed in work settings.") (boldface omitted). The administrative law judge's RFC determination largely incorporates Dr. Knox's RFC restrictions, containing limitations to simple, repetitive work, self-paced (non-production-line) work and limited interaction with supervisors, co-workers and the general public. *Compare id*. at 429 *with* Finding 6, *id*. at 21.[3]

One further wrinkle remains. At hearing, a vocational expert testified that a person with the restrictions posited by the administrative law judge could perform work as a laundry worker, a

---

[3] One other DDS non-examining consultant, David R. Houston, Ph.D., completed mental RFC assessments of the plaintiff dated July 23, 2002 and October 28, 2003. *See* Record at 298-300, 362-64. These assessments reflect improvement in the plaintiff's mental functioning between July 2002 and October 2003. *See id*. The 2003 Houston report is largely consistent with the Knox report, with both psychologists giving the plaintiff the same ratings in fifteen of the twenty Section I categories. *Compare id*. at 362-63 *with id*. at 427-28. With respect to three categories, Dr. Houston found a lesser level of impairment than did Dr. Knox, while with respect to two categories, Dr. Houston found a greater level of impairment. *Id*. Dr. Houston's 2003 RFC assessment (Section III of his report) is substantially similar to that of Dr. Knox. *Compare id*. at 364 *with id*. at 429. Thus, the administrative law judge supportably found
*(continued on next page)*

chainsaw operator and a linen grader. *See id*. at 68-70. However, in response to a question from plaintiff's counsel, the vocational expert opined that a person with the restrictions found by Dr. Knox could not perform any competitive work. *See id*. at 71-73. At first blush, this testimony appears to call into question the administrative law judge's judgment that the Knox report was consistent with his own. Nonetheless, the vocational expert explained that she based her opinion primarily on Dr. Knox's finding of moderate limitation in the performance of activities as scheduled. *See id*. at 73. As counsel for the commissioner again noted at oral argument, the checkboxes in Section I of the Knox report do not comprise his actual RFC assessment; *see also, e.g., id*. at 74 (comment by the administrative law judge at hearing that "the RFC are just checked blocks. I don't even know what moderate means. And ordinarily, I wouldn't allow that kind of a question because it doesn't – there's no – it calls for a lot of speculation."). In any event, the vocational expert never clarified what she construed the moderate limitation in question to mean. Her testimony notwithstanding, the administrative law judge reasonably could have concluded that a person with the RFC described by Dr. Knox in Section III of his report could perform competitive work if the work was sufficiently simple, repetitive and self-paced.[4]

In summary, the administrative law judge neither ignored Dr. Knox's opinion nor otherwise mishandled it.

---

his RFC assessment consistent with those of both Drs. Houston and Knox.

[4] I recognize that (i) the vocational expert testified, at hearing, that review of Section III of the Knox report (his actual RFC narrative) did not change her opinion, and (ii) the administrative law judge himself commented, "I'm not so sure that the notes [the narrative notes contained in Section III of Dr. Knox's report] are that illuminating either in this particular case." Record at 74. Nonetheless, it is clear from the administrative law judge's written decision that he ultimately concluded the Knox RFC assessment was consistent with his own. That judgment was reasonable. Furthermore, a vocational expert is not an expert in construing medical or psychological consultants' reports; the administrative law judge had no obligation to defer to her interpretation of the Knox report.

6

## B.  Vocational-Expert Testimony

The plaintiff next contends that the commissioner failed to carry her burden at Step 5 inasmuch as the administrative law judge relied on vocational-expert testimony elicited in response to a hypothetical question that misstated the plaintiff's RFC.  *See* Statement of Errors at 3-5.  For reasons discussed above, this point of error rests on two mistaken premises: that the administrative law judge ignored the Knox report, and that the Knox RFC assessment differed materially from that of the administrative law judge.  *See id*.  The plaint accordingly is without merit.

In any event, the administrative law judge's RFC determination was supported by substantial evidence of record in the form not only of the Knox and Houston DDS reports but also of other documents and testimony, including:

1.  Test results and testimony indicating that, despite the plaintiff's documented learning disability, anxiety and depression, he could read and write.  *See* Record at 18; *see also, e.g., id*. at 44, 50-51, 374-75.

2.  Global assessment of functioning scores generally ranging between 50 and 70, indicating only mild to moderate limitations in ability to function.  *See id*. at 18; *see also, e.g., id*. at 275, 283, 329.

3.  Evidence that the plaintiff has been willing, when it suits his purposes, to exaggerate his symptoms.  *See id*. at 18-19; *see also, e.g., id*. at 278, 304, 306, 316-17.

4.  Evidence that some purported restrictions may be attributable to work-ethic and/or attitude issues that are within the plaintiff's control.  *See id*. at 18; *see also, e.g., id*. at 38, 304, 306, 385, 403.

5.  Activities of daily living inconsistent with a purportedly disabling level of mental restriction, including attending to personal care, occasionally shopping, using the computer, reading

7

the newspaper, writing music lyrics, seeing his girlfriend four days a week, mixing hip-hop music with friends and traveling with friends to Las Vegas in November 2002 and to Orlando in November 2003. *See id*. at 19; *see also, e.g., id*. at 44, 46, 49-51, 185-86, 302, 391-92.

For these reasons, the administrative law judge committed no error in determining the plaintiff's RFC. He accordingly could rely in meeting the commissioner's Step 5 burden on testimony elicited from the vocational expert in response to a hypothetical question based on that RFC.

### C.  Trial Work Period

The plaintiff finally complains that the administrative law judge erred in relying on his "trial work period" to demonstrate an ability to engage in substantial gainful activity. *See* Statement of Errors at 5-7. This contention, as well, lacks merit.

A "trial work period" – a concept pertinent to SSD but not SSI benefits, *see, e.g., Newton v. Chater*, 92 F.3d 688, 692 n.1 (8th Cir. 1996) – is defined, in relevant part, as follows:

> (a) *Definition of the trial work period*. The trial work period is a period during which you may test your ability to work and still be considered disabled. It begins and ends as described in paragraph (e) of this section. During this period, you may perform *services* . . . in as many as 9 months, but these months do not have to be consecutive. We will not consider those services as showing that your disability has ended until you have performed services in at least 9 months. However, after the trial work period has ended we will consider the work you did during the trial work period in determining whether your disability ended at any time after the trial work period.
>
> ***
>
> (e) *When the trial work period begins and ends*. The trial work period begins with the month in which you become entitled to disability insurance benefits . . . . It cannot begin before the month in which you file your application for benefits . . . . It ends with the close of whichever of the following calendar months is the earliest:
>
> ***
>
> (2) The 9th month (whether or not the months have been consecutive and whether or not the previous 8 months of services were prior to January 1992) in which you have performed services within a period of 60 consecutive months if that 9th month is after December 1991; or

>    (3) The month in which new evidence, other than evidence relating to any work you did during the trial work period, shows that you are not disabled, even though you have not worked a full 9 months. We may find that your disability has ended at any time during the trial work period if the medical or other evidence shows that you are no longer disabled.

20 C.F.R. § 404.1592.

At the outset of the plaintiff's hearing, held on January 27, 2005, his counsel announced that the plaintiff was amending his application to seek a closed period of disability ending on September 30, 2004 inasmuch as he had been able to work almost full-time (albeit with special accommodations) since October 1, 2004. *See* Record at 31. The plaintiff himself later confirmed this, disavowing any intention to seek benefits for the period subsequent to September 30, 2004. *See id*. at 58-60.

The plaintiff testified at some length, largely in response to the administrative law judge's questions, about his new job as an auto detailer. *See id*. at 36-42. The administrative law judge later asked the vocational expert, among other things, whether there were other jobs available to the plaintiff offering the same kind of sheltered environment as the auto-detailing job. *See id*. at 76-77. She said there were (again naming the laundry-worker, chainsaw-operator and linen-grader jobs). *See id*. at 77. The administrative law judge commented: "So what I would say is that that indicates he can do more than the guy thought he could do who evaluated him. And the proof of it is that he is doing it, but it might turn up to be a trial work period." *Id*. The administrative law judge also stated: "This particular case I'm going to give substantial weight to the period of work that he's – successful work that he's done." *Id*. at 78. Still later, he mused:

> [C]ounsel's position is that I haven't adequately stated the restrictions that the medical file would – but I am considering the fact that he is operating in the job now successfully, with similar restrictions. . . . And how slender a re[e]d that is, I'm going to have to figure out later. I'm not going to make my [d]ecision yet. I'm just – I haven't decided. But sometimes I know at the end what I'm going to do, but I don't know now.

9

*Id*. at 79-80.

The plaintiff now faults the administrative law judge for having improperly relied on a trial work period – the auto-detailing job – to buttress his adverse decision. *See* Statement of Errors at 5-7. This argument misses the mark for at least four reasons:

1.   The concept of a trial work period is ill-fitted to the circumstances of this case. The plaintiff essentially conceded that any period of disability ended on September 30, 2004; thus, the question whether and when his disability, if any, had ceased (which can be tested by way of a trial work period) seemingly would not arise. *See, e.g., Harnois v. Barnhart*, No. CV-01-360-SM, 2004 DNH 140, 2004 WL 2203484, at *2 (D.N.H. Sept. 21, 2004) (" '[T]rial work' is something engaged in by individuals who are under a disability and who wish to test their ability to work without losing their status as disabled.").

2.   For the finish, the administrative law judge did not rely on the plaintiff's ability to perform the auto-detailing job. Perhaps concluding that this was indeed too slim a reed on which to predicate his decision, he omitted any mention of the auto-detailing job from his thorough, single-spaced, nine-page final written decision. *See id*. at 14-22.

3.   Even assuming *arguendo* that the administrative law judge did continue to rely *sub silentio* on the auto-detailing job and that such reliance constituted error,[5] any such error was harmless. As discussed above, the administrative law judge arrived at an RFC determination

---

[5] At oral argument, counsel for the plaintiff acknowledged that the trial-work theory is misplaced but continued to press the point that taking into account work performed following a closed period of disability is error. He cited no authority for this proposition; however, my research reveals that at least one court has held that when an applicant seeks a closed period of benefits, it is error in certain circumstances to base a finding of non-disability on capacity to work subsequent to the closed period. *See Moore v. Commissioner of Soc. Sec. Admin*., 278 F.3d 920, 925 (9th Cir. 2002) ("Given that the Social Security Act and regulations are designed to encourage individuals who have previously suffered from a disability to return to substantial gainful employment, we hold that an applicant's employment that begins after the end of the period for which the applicant is seeking disability benefits, unless wholly inconsistent with the claimed disability, is not a specific and legitimate reason for rejecting the opinions of examining physicians that an individual is disabled.") (citation and internal quotation marks omitted).

supported by substantial evidence of record apart from the plaintiff's ability to perform the auto-detailing job.

  4.  The *Newton* case, on which the plaintiff heavily relies for the proposition that the administrative law judge committed reversible error, *see* Statement of Errors at 5-7, is materially distinguishable. In *Newton*, the claimant had applied for SSD and SSI benefits in April 1993, alleging a disability onset date of October 1992, and had briefly worked at two jobs (one from June to September 1994 and one in October 1994) prior to his hearing before an administrative law judge in November 1994. *See Newton*, 92 F.3d at 690. The administrative law judge denied his application on the bases that the three-month job (i) amounted to substantial gainful activity (Step 1 of the sequential-evaluation process) and, (ii) alternatively, constituted evidence of ability to return to past relevant work (Step 4). *See id*. at 693. The *Newton* court held that the administrative law judge "erred in basing a decision of no disability on Newton's 1994 work without considering whether it qualified as falling within a trial work period." *Id*. The court observed: "If Newton was disabled for five consecutive months before he began work in June 1994, then he would have been entitled to disability insurance benefits and a trial work period." *Id*. Here, the plaintiff himself sought a closed period of disability benefits, essentially conceding that he was not disabled after September 30, 2004, and the administrative law judge did not rely, at any step of the sequential-evaluation process, on the auto-detailing job to show ability to engage in substantial gainful activity.[6]

---

[6] What is more, neither the First Circuit nor the United States Supreme Court has weighed in on whether it would side with the United States Court of Appeals for the Eighth Circuit with respect to the question presented in *Newton*. In reaching its result, the *Newton* court rejected, as inconsistent with governing statutory provisions, Social Security Ruling 82-52, which decreed that a trial-work period begins only after benefits have been awarded and a claimant has been disabled for twelve consecutive months. *See Newton*, 92 F.3d at 694. The *Newton* court reasoned: "The language in the statutes and regulations does not require that a trial work period be conditioned on a prior receipt of benefits and/or the lapse of a twelve month period of disability." *Id*. Subsequent to *Newton*, the Supreme Court issued a decision upholding, as permissible, a different aspect of the commissioner's interpretation of the trial-work statute. *See Barnhart v. Walton*, 535 U.S. 212, 222-25 (2002). While *Walton* did not overrule *Newton*, it calls into question the validity of the *Newton* court's approach to the issue of the deference due the commissioner's interpretation of governing statutes. *See id*.

## II.  Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within ten (10) days after being served with a copy thereof.  A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 1st day of June, 2006.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge